UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| CHAD A. ALEX | * | CIVIL ACTION |
| | * | |
| | * | NO. 07-9183 |
| | * | |
| WILD WELL CONTROL, INC. ET AL | * | SECTION "L"(5) |

## <u>ORDER & REASONS</u>

Before the Court are the parties' cross-motions for summary judgment (Rec. Doc. Nos. 34 and 51). The Court, having reviewed the arguments of counsel, the record, and applicable jurisprudence, is fully advised and now ready to rule.

### I.   BACKGROUND

This case arises out of injuries sustained by the Plaintiff aboard the M/V TOISA PROTEUS, allegedly owned and/or operated and/or controlled by the Defendant Newfield Exploration Company. The Plaintiff was employed by Longnecker Properties, Inc. ("Longnecker") as a rigger from November 16, 2005 though December 13, 2006. The Plaintiff alleges that he was a member of the crew aboard the M/V TOISA PROTEUS, and that he was a rigger working in the course and scope of his employment on or about November 19, 2006, when the vessel's crane dropped a personnel basket onto Plaintiff's right hand. The Plaintiff also alleges that on December 11, 2006, he was performing his customary duties as a rigger aboard the M/V TOISA PROTEUS when the vessel's crane block struck an unsecured staircase, causing the staircase to flip over and strike the Plaintiff, resulting in injuries to the Plaintiff's ribs, shoulders, neck and back. The Plaintiff sues pursuant to the Jones Act and the General Maritime Law. The Plaintiff seeks maintenance and cure, attorney's fees, past and future earning capacity

and other damages from all Defendants jointly and in solido for the total sum of $950,000.

On May 6, 2008, the Plaintiff filed an amended complaint naming Sealion Shipping Limited, the operator of the vessel, and Toisa Limited, the owner of the vessel as defendants. On April 8, 2009, the Plaintiff filed a third amended complaint naming Crescent Drilling, Inc. as a defendant and asserting that his injuries were caused by the negligence of Crescent Drilling, Inc. and its employees.

The Defendants answered and denied liability. On October 17, 2008, Newfield Exploration Company ("Newfield") filed a cross-claim against Longnecker. Newfield alleges that the Plaintiff was injured while employed by Longnecker. At all material times, there was a contract between Newfield and Longnecker that required Longnecker to perform its work in a safe and proper manner, and to indemnify Newfield for any liability arising out of the performance of the contract. The contract also required Longnecker to obtain liability insurance. Longnecker responded to the cross-claim, alleging that all insurance and indemnity provisions in the contract are void pursuant to the Louisiana and/or Texas Oilfield Anti-Indemnity Acts.

On September 17, 2009, the Plaintiff filed a second amended complaint naming the O'Brien's Group, Inc. ("O'Brien's"), employer of the Deck Safety Officer aboard the M/V TOISA PROTEUS, as a defendant. O'Brien's provides services such as response management and preparedness and safety consultation for land facilities and vessels. Newfield contracted with O'Brien's through a master service agreement. At the time of the accidents, an on-site safety professional employed by O'Brien's was aboard the M/V TOISA PROTEUS to provide safety consultation on the vessel and barge. O'Brien's answered the complaint, denying liability, and filed a cross-claim against Newfield alleging that pursuant to the terms of the contract Newfield was obligated to defend and indemnify O'Brien for such injuries.

## II. THE MOTION

Longnecker filed a Motion for Summary Judgment arguing that the Plaintiff does not meet the requirements for Jones Act status as a matter of law. Longnecker contends that during his employment, the Plaintiff did not have a substantial connection either to a single vessel in navigation or to an identifiable fleet of vessels under the common ownership or control of his employer. The Plaintiff worked on at least eleven (11) different vessels owned by at least four (4) different companies during his employment. None of these vessels were owned by Longnecker, the Plaintiff's employer, as it is a company specializing in providing personnel in maritime rigging operations, and does not own, operate or charter any vessels in connection with its marine rigger operations. As the Plaintiff fails to show that at least 30% of his time was spent on vessels under the Defendant-employer's common ownership or control, Longnecker claims that the Plaintiff is ineligible for seaman status.

In response, the Plaintiff filed a motion for summary judgment contending that he meets the requirements for seaman status. The Plaintiff asserts that there is no requirement that a Jones Act employer be the owner of a vessel on which a Plaintiff is employed. His duties as a rigger contribute to the function of the vessels and they are substantial in terms of their nature. He states that he worked 185 days for Longnecker, of which 175 were spent working aboard one of thirteen (13) vessels operated by four (4) companies. Further, 32% to 37% of his time was spent working as a rigger aboard a single vessel, the M/V TOISA PROTEUS. Accordingly, the uncontested facts establish that the Plaintiff met all requirements for Jones Act seaman status.

## III. LAW & ANALYSIS

Seamen are entitled to sue for damages under the Jones Act. *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 560, 117 S. Ct. 1535, 137 L.Ed. 2d 800 (1997); *Chandris, Inc. v.*

*Latsis*, 515 U.S. 347, 115 S. Ct. 2172, 132 L.Ed.2d 314 (1995). The Supreme Court has established that seaman status requires (1) that the plaintiff's employment duties contribute to the function of a vessel or the accomplishment of a vessel's mission, and (2) that the plaintiff have a connection to a vessel in navigation that is substantial in duration and nature. *Id.* To attain seaman status, a claimant must show that he was either permanently assigned to or performed a substantial part of his work aboard a vessel or identifiable group of vessels under common ownership or control. *Id.* at 555-58. The purpose of the test is to "separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection with a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea." *Id*. at 371. The parties do not dispute whether the Plaintiff's work contributed to the function of a vessel.

The Supreme Court has recognized that "[t]he inquiry into seaman status is of necessity fact specific; it will depend on the nature of the vessel and the employee's precise relation to it." *Id.* at 371 (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991)). However, seaman status determinations may be made by summary disposition in the district court. *See id.* If the facts and law reasonably support only one conclusion as to seaman status, the district court must decide the question. *See St. Romain v. Industrial Fabrication and Repair Service, Inc*., 203 F.3d 376, 378 (5th Cir.2000).

"A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Chandris*, 515 U.S. at 371. The parties do not dispute the fact that the Plaintiff did work for Longnecker on eleven to

thirteen different vessels owned by at least four different companies, none of which were owned by Longnecker. The Plaintiff further states that it is undisputed that at least 30 percent of his time was spent working as a rigger aboard a single vessel, the M/V TOISA PROTEUS. Longnecker argues that where 30 percent of the plaintiff's time is not spent on vessels under the common ownership or control of the *defendant-employer*, the plaintiff is not a seaman as a matter of law. The disputed issue for the Court is whether a plaintiff is eligible for seaman status where at least 30 percent of his time is spent on vessels under the common ownership or control of an entity that is not his employer.

In *Bertrand v. International Mooring & Marine, Inc.*, 700 F.2d 240 (5th Cir.1983), the Fifth Circuit reversed the decision of the district court granting summary judgment for the defendant-employer on the issue of seaman status. The parties disputed the seaman status of anchorhandlers who worked on various vessels not all owned by the plaintiffs' employer. The court noted that the anchorhandlers worked on twenty-five vessels and that approximately ninety per cent of the work was performed aboard the vessels. The court further noted that the crew ate and slept aboard the vessels, and their tour of duty with a vessel was for the duration of the vessel's mission. Further, the plaintiffs never worked except in conjunction with the vessels, their work for the vessels was their primary duty, and the plaintiffs aided in preparing the vessel for its mission. The court allowed the plaintiff to assert a Jones Act claim, even though the "employer neither own[ed] nor control[led] the several vessels upon which the seaman work[ed]." *Id*. at 245.

The Fifth Circuit later explained,

"although Bertrand thus expanded the concept of a fleet to encompass vessels used, but not owned or chartered, by the employer, we do not believe that it can fairly be read so broadly as to confer seaman status on every worker whose duties place him aboard a large number of randomly-owned and controlled vessels for short periods of time that aggregate to comprise a substantial portion of his working time, nor do we believe that Bertrand rejected the identifiable or recognizable fleet requirement established by our prior cases. Rather, Bertrand must be read in light of the factual situation it involved."

*Buras v. Commercial Testing & Engineering Co.*, 736 F.2d 307, 311 (5th Cir.1984) (finding that plaintiff, who was randomly assigned to between five and fifty barges daily to test the temperature of coal, whose contact with a given vessel was short in duration and limited to the administration of a temperature test, who neither ate nor slept aboard a vessel and who was not assigned to an identifiable fleet, but rather to identifiable fleeting facilities, had a transitory connection to vessels and was not a "seaman" for Jones Act purposes); *see also St. Romain v. Industrial Fabrication and Repair Service, Inc.*, 1998 WL 132765 (E.D.La. Mar. 20, 1998) ("The Bertrand claimants were, arguably, at least, 'classical blue water' workers engaged in traditional maritime activities.") (denying seaman status where plaintiff worked on various fixed platforms and liftboats on various jobs over approximately two years, which were owned and charter-operated by different companies, and which were not acting together under the control of a single entity).

The Fifth Circuit in *Roberts v. Cardinal Servs., Inc.,* 266 F.3d 368, 377 (5th Cir.2001) stated "when a group of vessels is at issue, a worker who aspires to seaman status must show that at least 30 percent of his time was spent on vessels, every one of which was under his *defendant-employer's* common ownership or control." (emphasis added). In *Roberts*, the plaintiff spent only 24.88 percent of his time assigned to vessels under the ownership or control of his employer. The court rejected the plaintiff's contention that the 30 percent requirement was not meant to be applied to the fleet requirement. *Id.*; *see also Willis v. Fugro Chance, Inc.*, 278 Fed. Appx. 443 (5th Cir.2008) (finding a plaintiff who failed to show that 30 percent of his time was on vessels under the common ownership or control of his employer was not a seaman, even if his work regularly exposed him to the perils of the sea). In the instant case, the Defendant takes the position that these cases indicate that at least 30 percent of the Plaintiff's time must be spent on a vessel under the Defendant-employer's ownership or control.

This issue was directly addressed in 2008 in *Jenkins v. Aries Marine Corp.*, 554 F.Supp.2d 635 (E.D.La. 2008), where the court held that the employer does not have to be the owner or operator of the group of vessels on which the plaintiff spent at least 30 percent of his time. The defendant argued that the plaintiff's work on four vessels under the common ownership or control of Tidewater Marine, a third party, did not satisfy the 30 percent threshold because those vessels were not owned or controlled by the defendant, plaintiff's employer. The court disagreed. The court distinguished *Roberts* as a case involving 24.88 percent of the plaintiff's time on vessels owned/controlled by his employer, and 13.54 percent of his time on unrelated third-party vessels. The *Jenkins* court construed the holding in *Roberts* to mean "in that context,

that the 30 percent could not be a combination of employer controlled and other third party vessels. Thus, for an employee who works on multiple vessels, it must be shown that 30 percent or more of his time was spent on vessels under ownership or control of ONE common entity." *Id.* at 640-41. The court further noted that the *Roberts* decision did not overrule or have any effect on *Bertrand*, "with respect to long-standing Fifth Circuit jurisprudence holding that the employer need not be the owner or operator of the group of vessels." *Id.* at 641 (citations omitted). *See also*, *Deshazo v. Baker Hughes Oilfield Operations, Inc.*, 2000 WL 798410, *3 (E.D.La. June 19, 2000) ("Although plaintiff's employer need not be the one who owns or operates the group of vessels, a 'fleet' is not simply any group of vessels an employee happens to work aboard.").

Although the cases cited by the Defendant contain language indicating that 30 percent of the plaintiff's time must be spent on vessels owned by the defendant-employer, none of the cases involve situations where the plaintiff spent 30 percent or more of his time on a single vessel, or a group of vessels subject to common ownership and control. For example, the *Willis* plaintiff, who assisted his employer in moving various vessels to maintain a database regarding the positions of wells, pipelines and hazards, could better be characterized as working "aboard a large number of randomly-owned and controlled vessels," rather than having a substantial connection to a vessel or identifiable fleet of vessels. 278 Fed. Appx. at 447. Further, the cases cited emphasize the distinction between land-based workers and vessel workers. If the Plaintiff is a blue-water seaman on a vessel not owned or controlled by his employer, he is a seaman. The court in *Roberts* stated, "[t]he 30 percent floor does not change when an 'identifiable group' of vessels in navigation is at issue, rather than just one vessel." 266 F.3d at 375. There is no basis to

find that a sea-based worker, on an identifiable fleet of vessels subject to common ownership or control, must work on vessels owned or controlled by the defendant-employer in order to qualify as a seaman.

In the instant case, the Plaintiff meets the *Chandris* test. The uncontested facts demonstrate that the Plaintiff spent between 32 percent and 37 percent of his time in service to a single vessel, the M/V TOISA PROTEUS. The parties do not dispute that the Plaintiff, as a rigger, was doing the ship's work and contributed to the function of the vessels. The Court finds that the Plaintiff had a connection to a vessel in navigation that is substantial in terms of both its duration and its nature, and summary judgment must be granted in favor of the Plaintiff finding that he is entitled to seaman status. It is not a prerequisite for the Plaintiff's employer to own a vessel for him to qualify for seaman status under the Jones Act or General Maritime Law.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that the Plaintiff Chad A. Alex's Motion for Summary Judgment (Rec. Doc. No. 51) regarding seaman status be and is hereby GRANTED. IT IS FURTHER ORDERED that the Defendant Longnecker Properties, Inc.'s Motion for Summary Judgment (Rec. Doc. No. 34) be and is hereby DENIED.

New Orleans, Louisiana this 26th day of May, 2009.

_____
UNITED STATES
DISTRICT JUDGE